ELIZABETH A. WOLFORD, United States District Judge *392 INTRODUCTION
Represented by counsel, Plaintiff Michael Coleman, Sr. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 15), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 12) is denied.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on September 5, 2013. (Dkt. 7 at 68, 132-33).[2] In his applications, Plaintiff alleged disability beginning October 23, 2012, due to high blood pressure, back injury, arthritis in both knees and shoulders, and depression. (Id. at 68, 108). Plaintiff's applications were initially denied on November 27, 2013. (Id. at 68, 134-41). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello in Rochester, New York, on October 5, 2015. (Id. at 68; Dkt. 11 at 3-36). On January 21, 2016, the ALJ issued an unfavorable decision. (Dkt. 7 at 65-81). Plaintiff requested Appeals Council review; his request was denied on April 27, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-8). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also *393 Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through March 31, 2015. (Dkt. 7 at 70). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 23, 2012, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: depression; antisocial personality disorder ;
*394 impulse control disorder ; impingement syndrome, shoulder; patellofemoral syndrome ; and alcohol substance use disorder. (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of hip bursitis and fracture of the fifth metacarpal were non-severe. (Id. at 71).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 71). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (Id. at 71-72).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff only perform:
work that requires sufficient attention and concentration to understand, remember and follow simple instructions and [Plaintiff] should work primarily alone, with only occasional supervision.
(Id. at 72). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 79).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of collator operator and photocopy machine operation. (Id. at 79-80). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 80-81).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner. (Dkt. 12-1 at 29). Plaintiff contends that the ALJ disregarded all of the medical opinions in the record relating to Plaintiff's mental functioning and, in that context, raises several issues, including: (1) the ALJ improperly weighed opinion evidence, including the opinions of Janie-Lynn Selden, LMSW, and Adam Brownfield, Ph.D., a consultative examiner; (2) the ALJ disregarded every opinion in the record, and therefore based the RFC finding on his own interpretation of the medical record; and (3) the RFC does not include certain mental limitations articulated by Ms. Selden and Dr. Brownfield, including Plaintiff's moderate limitation in concentration, persistence, and pace. (Id. at 22-29). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.
A. The ALJ Properly Evaluated the Opinion Evidence in the Record [3]
In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:
the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a *395 whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin , No. 14-CV-159-JTC, 2015 WL 1280484 at *4, 2015 U.S. Dist. LEXIS 35143 at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. Hall v. Colvin , 37 F.Supp.3d 614, 625 (W.D.N.Y. 2014) (quoting Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) ). In this case, both Plaintiff's therapist, Ms. Selden, and Dr. Brownfield, the consultative examiner, issued opinion evidence pertaining to Plaintiff's mental functional capacity.
1. Dr. Brownfield's Opinion
Dr. Brownfield examined Plaintiff on November 11, 2013. (Dkt. 7 at 349). Dr. Bownfield found that Plaintiff was cooperative, and that his presentation was adequate. (Id. at 350). Plaintiff's speech was clear, and his thought processes were coherent and goal directed. (Id. at 351). His affect varied between anxious and irritated, and his mood varied between dysthymic and irritable. (Id. ). Dr. Brownfield noted that Plaintiff's attention and concentration skills were "impaired due to emotional distress. [Plaintiff] was able to count and do simple calculations, but unable to do the serial 3s correctly. He did not want to try." (Id. ). Plaintiff's recent and remote memory skills were intact. (Id. ). Dr. Brownfield found that Plaintiff's cognitive functioning was in the "borderline impaired range," and that his "[g]eneral fund of information was appropriate to experience." (Id. ). Plaintiff's insight and judgment were poor. (Id. ). Dr. Brownfield ultimately opined that, with regard to Plaintiff's mental functioning, there was:
[n]o evidence of limitation in following and understanding simple directions and instructions, performing simple tasks independently, and maintaining a regular schedule. [Plaintiff] is mildly limited in maintaining attention and concentration and learning new tasks. [Plaintiff] is moderately limited in performing complex tasks independently and may require supervision. [Plaintiff] is markedly limited in making appropriate decisions, relating adequately with others, and appropriately dealing with stress. These difficulties are caused by psychiatric symptoms.
(Id. at 352). The ALJ assigned "some weight" to Dr. Brownfield's opinion, "based on his programmatic expertise and consistency with the record." (Id. at 76). The ALJ further noted that "once in mental health treatment on a consistent basis, [Plaintiff] had significant improvements in his ability to control anger and impulses"; accordingly, Plaintiff's mental condition improved following his examination by Dr. Brownfield. (Id. ). The Court has reviewed the treatment notes relative to Plaintiff's mental functioning and agrees that his condition improved following his consultative examination with Dr. Brownfield. (See, e.g., id. at 596 (in October 2014, Plaintiff reported that he had significant improvement with emotion regulation techniques, and was able to travel to Florida to support his son, who was facing criminal charges there); id. at 598 (in November 2014, "[Plaintiff] maintains significant improvement with emotion regulation techniques. He has demonstrated improved understanding of triggers that lead to anger for him and incorporated additional active problem solving skills to maintain stable affect and limit expressions and anger") ).
*396 As a consultative examiner, Dr. Brownfield's opinion was not entitled to controlling weight. See Pagano v. Comm'r of Soc. Sec. , No. 16-CV-6537-FPG, 2017 WL 4276653 at *5, 2017 U.S. Dist. LEXIS 158656 at *12-13 (W.D.N.Y. Sept. 27, 2017) ("a consultative examiner's opinion is generally entitled to 'little weight,' because their examinations are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day") (internal quotations and citations omitted). The ALJ properly considered Dr. Brownfield's opinion relating to Plaintiff's functional capacity both within the context of his specialty and in relation to Plaintiff's mental health record as a whole. Specifically, the ALJ correctly noted that, since Dr. Brown's consultative examination, Plaintiff had received mental health counseling and demonstrated significant improvement in managing his psychiatric symptoms. See Oliver v. Comm'r of Soc. Sec. , No. 16-CV-6278 CJS, 2017 WL 5159195 at *9, 2017 U.S. Dist. LEXIS 184307 at *26-27 (W.D.N.Y. Nov. 7, 2017) (ALJ properly assigned "some weight" to medical opinion rendered immediately after her rotator cuff surgery, as the record showed that the plaintiff experienced further improvement). Accordingly, the ALJ properly considered and weighed Dr. Brownfield's opinion relating to Plaintiff's mental health limitations. Remand on this basis is not warranted.
2. Ms. Selden's Opinions
Ms. Selden issued several opinions relating to Plaintiff's mental functional capacity, which the ALJ summarized in the written determination. (See Dkt. 7 at 77-79 (discussing Ms. Selden's employability assessments completed in March 2014, August 2014, February 2015, July 2015, and September 2015, and functional capacity questionnaires from February 2015 and September 2015) ). Ms. Selden opined with relative consistency that Plaintiff was moderately limited in his capacity to: follow, understand, and remember simple instructions; perform simple and complex tasks independently; and maintain attention and concentration for rote, low stress, or simple tasks. (Id. at 366, 384, 389, 393, 397).
On August 28, 2014, Ms. Selden opined that Plaintiff could work five hours per week, with the additional limitations that Plaintiff could not work in large crowds, needed breaks to cope with stress, and required supervision. (Id. at 366-67). The ALJ assigned "little weight" to this opinion, because contemporaneous treatment records indicated that Ms. Selden felt that Plaintiff could return to work, but through conversation both she and Plaintiff agreed on the five-hour limitations. (Id. at 77; see also id. at 691 ("Through conversation and explanation of accommodations that can be made [Plaintiff] was able to come to the agreement to test out the DSS work unit assignment for five hours per week") ).
Similarly, in February 2015, Ms. Selden opined that Plaintiff was moderately limited in all functional areas but had a GAF of 55. (Id. at 392-93). She stated that Plaintiff was able to work for five hours per week, and noted that his motivation to seek work had stalled. (Id. ). The ALJ assigned "little weight" to this opinion, as it was not consistent with Ms. Selden's treatment notes, which indicated that Plaintiff was able to work. (Id. at 77).
The Court has reviewed Ms. Selden's treatment notes and agrees that, despite submission of opinions indicating that Plaintiff could not work, Ms. Selden pushed Plaintiff to seek out work. (See, e.g., id. at 739 (on February 11, 2015, discussing that Plaintiff applied for job as a peer counselor at PROS, staff had encouraged him to apply, but he ultimately *397 was not given the position); id. at 742 (on March 11, 2015, "[Plaintiff] notes that despite having been turned down [for] the position as a peer counselor through this agency, he continues to look through other programs for similar positions") ).
Ms. Selden completed a functional capacity questionnaire in February 2015. (Id. at 376-81). She noted that Plaintiff's treatment frequency had been reduced to one visit per month, but that he was apprehensive about returning to work. (Id. at 376). Ms. Selden opined that Plaintiff's performance in mental abilities and aptitudes for simple work was precluded for less than ten percent of an eight-hour workday in almost all work areas, with the exception of working in coordination with or proximity to others, accepting criticism from supervisors, and getting along with co-workers. (Id. at 378-79). Ms. Selden further opined that Plaintiff would be absent from work for more than four days per month and was not able to engage in fulltime employment due to a lack of motivation. (Id. at 380). The ALJ assigned some weight to Ms. Selden's opinions relating to Plaintiff's mental functioning capacities, based on the treatment relationship and consistency with the record. (Id. at 78). However, the ALJ noted that the conclusion that Plaintiff was unable to work was contrary to Ms. Selden's assessment of Plaintiff's mental functioning capacity. (Id. ).
In July 2015, Ms. Selden opined that Plaintiff was able to work for ten hours per week and had normal functioning in his ability to perform simple work and maintain attention and concentration. (Id. at 395-98). The ALJ assigned "little weight" to this opinion, because Ms. Selden's restriction of Plaintiff's work to ten hours was not supported by her treatment notes, which indicated that she had encouraged Plaintiff to seek out employment. (Id. at 79). As noted above, Ms. Selden's treatment notes reveal that she encouraged Plaintiff to seek out employment and indicated that Plaintiff was ready to return to the workforce. (See, e.g., id. at 750 (on April 14, 2015, Ms. Selden "inquired about and engaged in active listening while [Plaintiff] spoke of his efforts to engage in change to improve upon his ability to seek out paid work"); id. at 757 (on May 12, 2015, discussing that Plaintiff fears that his wife will interfere with his ability to keep a job; Ms. Selden acknowledged Plaintiff's fears but "connected how continuing to do what he's always done limits his ability to see positive change in his life"); id. at 762 ("within the last three months [Plaintiff] continued to state that he has not accepted the fact that he is ready to work..."); see also id. at 602 (treatment notes from PROS at Genesee reveal that Plaintiff wanted to be employed as a PROS peer specialist) ).
In September 2015, Ms. Selden completed another employability assessment. (Id. at 770-73). Ms. Selden opined that Plaintiff was only moderately limited in most areas of mental functioning, but could not work at all for three months. (Id. at 772). The ALJ assigned "little weight" to this opinion because it conflicted with Ms. Selden's notes, which showed ongoing improvement in Plaintiff's mood, and treatment focused on legal issues with his ex-wife and obtaining housing, rather than addressing mental health-related limitations. (Id. at 78; see, e.g., id. at 751 ("[Plaintiff] points to other contributing factors to the reasons why he has not been able to make changes ... including being harassed by his ex wife, not having secure housing"); id. at 757 ("While meeting [Plaintiff] noted that he continues to feel stressed in regard to fears that his ex wife is going to press false charges against him....") ).
*398 Ms. Selden also completed another medical source statement in September 2015, which was similar to the assessment she completed in February 2015. (See id. at 775-81). Ms. Selden opined that Plaintiff would be precluded from performing a number of tasks up to twenty percent of the time, struggled working with others, would be "off-task" thirty percent of the day, and could not engage in full-time employment. (Id. ). The ALJ assigned "little weight" to this opinion, because it conflicted with Ms. Selden's treatment notes, which showed ongoing improvement in terms of Plaintiff's mental functioning. (Id. at 78-79). The ALJ also noted that the limitations included in the September 2015 evaluation were more severe than those included in the February 2015 evaluation, and that the increase in severity also was contrary to Ms. Selden's reports of improvement. (Id. ).
The Court has reviewed the treatment notes from Catholic Family Center authored by Ms. Selden, and finds that the ALJ's assessment of Ms. Selden's opinions is reasonable. As an initial matter, by virtue of her status as a social worker, Ms. Selden's opinions are not entitled to any special weight. See Barco v. Comm'r of Soc. Sec. , 330 F.Supp.3d 913, 919-20 (W.D.N.Y. 2018) ("Licensed social workers are not ... an acceptable medical source. Thus, a licensed social worker cannot be a treating source, and cannot give 'medical opinions.' Because ALJ's are only required to weigh and evaluate 'medical opinions,' the ALJ was not required to give [the social worker's] opinion any weight") (internal citation omitted). "Nevertheless, an ALJ should consider evidence from 'other sources,' ... on important issues like the severity of an impairment and any related functional effects." Coger v. Commissioner of Social Security , No. 1:17-CV-00741 EAW, 2018 WL 4629131, at *3, 2018 U.S. Dist. LEXIS 166460 at *9 (W.D.N.Y. Sept. 26, 2018). The written determination contains a thorough recitation of Plaintiff's treatment history with Ms. Selden and the various opinions offered by Ms. Selden. (See Dkt. 7 at 76-79). It is clear from the written determination that the ALJ considered Plaintiff's treatment history with Ms. Selden, including the length and frequency of treatment; the evidence supporting Ms. Selden's opinions; and the consistency of Ms. Selden's opinions with her own treatment notes, as well as the record as a whole.
Further, it is well-settled that an ALJ may discount an opinion when it is internally inconsistent. See Wilber v. Comm'r of Soc. Sec. , No. 17-CV-621(MAT), 2018 WL 5489571, at *4, 2018 U.S. Dist. LEXIS 184808, at *11 (W.D.N.Y. Oct. 29, 2018) ("An ALJ may properly discount even a treating physician's opinion due to its inconsistency [with], among other things, the source's own treatment notes"); see also Domm v. Colvin , 579 F. App'x 27, 28 (2d Cir. Sept. 2014) (ALJ may discount the opinion of a treating physician when the opinion is internally inconsistent, inconsistent with other evidence, and inconsistent with the plaintiff's testimony). As noted by the ALJ several times in the written determination, Ms. Selden's opinion that Plaintiff was not able to work, or was able to work only five to ten hours per week, conflicts with her own treatment notes and mental health assessments. For example, Ms. Selden's mental health assessments of Plaintiff reveal only moderate limitations in almost every level of mental functioning. (See Dkt. 7 at 366, 378-79, 384, 389, 393, 397). These relatively modest limitations conflict with Ms. Selden's assertion that Plaintiff is unable to work. Further, as noted above, the mental health treatment notes in the record reveal Plaintiff's improvement in handling the limitations *399 caused by his mental impairment. (See id. at 596, 598). Moreover, despite her stated opinion that Plaintiff is unable to work, Ms. Selden repeatedly encouraged Plaintiff to start working. (See id. at 739, 742, 750, 757). In sum, Ms. Selden's opinions that Plaintiff is unable to work are not supported by the evidence in the record and, coupled with the fact that her opinions were not "medical opinions," the ALJ properly afforded them "little weight." Remand on this basis is not warranted.
B. The RFC is Supported by Substantial Medical Evidence in the Record
Plaintiff also contends that the ALJ improperly assessed the RFC based on his own lay interpretation of the medical record. This assertion is not supported by the record. In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
The ALJ in this case concluded that Plaintiff retained the mental RFC to perform "work that requires sufficient attention and concentration to understand, remember and follow simple instructions," and work that would allow Plaintiff to "work primarily alone, with only occasional supervision." (Dkt. 7 at 72). The mental RFC finding is adequately supported by the record, and it is clear to the Court how the ALJ arrived at the assessed mental RFC. For example, the portion of the RFC assessment concluding that Plaintiff can perform work that requires sufficient attention and concentration to understand, remember, and follow simple instructions, is supported by the opinion issued by Dr. Brownfleld, who found that Plaintiff had no limitation in following and understanding simple directions and instructions and performing simple tasks independently, and was only mildly limited in maintaining attention and concentration, and learning new tasks. (Id. at 352). Similarly, Ms. Selden's mental health assessments reveal only moderate limitations in almost every level of mental functioning, including the capacity to follow, understand, and remember simple instructions and directions; performing simple and complex tasks independently; and maintaining attention and concentration for rote tasks. (Id. at 366, 378-79, 384, 389, 393, 397). In a more recent evaluation from July 2015, Ms. Selden opined that Plaintiff had no limitations in following, understanding, and remembering simple instructions and directions, as well as maintaining attention and concentration for rote tasks. (See id. at 397).
*400 The portion of the RFC finding that Plaintiff can work primarily alone, with occasional supervision, is also supported by the record. For example, Dr. Brownfield opined that Plaintiff has difficulty "relating adequately to others," and "may require supervision" (Dkt. 7 at 352), which supports an RFC that allows Plaintiff to work primarily alone with some supervision. Likewise, Ms. Selden opined that Plaintiff "cannot work in large crowds" and "requires supervision with a person who can collaborate positively." (Id. at 367; see also id. at 366, 384, 389, 393, 397 (Plaintiff only moderately limited in his ability to perform simple and complex tasks independently); id. at 378 (Plaintiff less than ten percent precluded from sustaining an ordinary routine without special supervision) ).
Plaintiff contends that the ALJ's RFC finding "directly contrasts" with the opinion evidence in the record. (Dkt. 12-1 at 28). However, when assessing the RFC, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Matta , 508 F. App'x at 56. Simply because the ALJ did not adopt precisely the opinions of Dr. Brown and Ms. Selden does not mean that the RFC assessment is not consistent with their assessment of Plaintiff's capabilities, particularly those relating to Plaintiffs mental functioning. In sum, it is clear to the Court how the ALJ arrived at the assessed RFC. There are several opinions in the record that are consistent with the assessed mental limitations, and the ALJ's deviation from those opinions was adequately described in the written determination. (See Section (II)(A), supra ). Remand on this basis is not warranted.
C. The RFC Finding Properly Accounts for Plaintiff's Mental Limitations
In connection with his argument that the ALJ improperly assessed the RFC, Plaintiff contends that certain mental limitations assessed by Ms. Selden and Dr. Brownfield were not included in the RFC. According to Plaintiff, these include "Plaintiff's difficulties with sustained attention and concentration, his limitations in making appropriate decisions, dealing with normal work stress, maintaining a regular schedule, and in performing simple work." (Dkt. 12-1 at 24).
"An ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand so long as the RFC is otherwise supported by substantial evidence." Diakogiannis v. Astrue , 975 F.Supp.2d 299, 313 (W.D.N.Y. 2013). Regarding the additional limitations assessed by Ms. Selden and Dr. Brownfield, it is clear from the written determination that the ALJ considered all of the opinion evidence relating to Plaintiff's mental functioning, including Plaintiff's difficulties in concentrating, making decisions, and dealing with stress. (See, e.g., id. at 77 ("[Ms. Selden] concluded that [Plaintiff]... needed breaks to cope with stress" and had "moderate limitations ... in the ability to ... maintain attention and concentration; and perform low stress and simple tasks."); id. at 76 (discussing Dr. Brownfield's opinion that Plaintiff "was mildly limited in maintaining attention and concentration and learning new tasks. He opined moderate limitations in performing complex tasks independently and marked limitations in maintaining appropriate decisions, relating adequately with others and appropriately dealing with stress") ). As noted above, the assessed RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision," Matta , 508 F. App'x at 56, and the written determination adequately explains how the ALJ arrived at Plaintiff's mental *401 RFC, which incorporated Plaintiff's mild limitations in following instructions and maintaining concentration, as well as his need for an independent working environment with some degree of oversight. These limitations clearly address and are consistent with the opinion evidence relating to Plaintiff's difficulties with sustained attention and concentration, making appropriate decisions, maintaining a regular schedule, and performing simple work. See Johnson v. Berryhill , No. 1:17-cv-00684-MAT, 2018 WL 4539622, at *6, 2018 U.S. Dist. LEXIS 161935, at *18-19 (W.D.N.Y. Sept. 21, 2018) ("Contrary to Plaintiffs argument, the ALJ included significant mental limitations in the RFC finding, including limiting Plaintiff to simple, routine tasks - a limitation which accounts for Dr. Baskin's findings regarding Plaintiff's difficulties in maintaining attention and concentration, performing complex tasks, and learning new tasks"); see also Diakogiannis , 975 F.Supp.2d at 315 (ALJ's conclusion that the plaintiff was able to perform simple, routine and repetitive tasks, and that he could not perform production or pace work, was consistent with limitations relating to ability to use judgment, respond to supervision and coworkers, or deal with changes in the work setting). Likewise, the assessed RFC properly accounts for Plaintiff's limitations in dealing with work-related stress, which appeared to stem from Plaintiff's inability to work well with others and take instruction from authority figures. (See, e.g., id. at 778-80 (Plaintiff "has a history of lashing out towards authority figures at work, struggles when being told what to do, and is easily agitated"; Plaintiff has "anger, irritability, lack of motivation, fear of socialization"; and Plaintiff "would be triggered when in a structured setting [with] coworkers and administrative staff") ). The ALJ's failure to include specifically in the RFC all of the mental limitations assessed by Dr. Brownfield and Ms. Selden does not necessitate remand.
Plaintiff further contends that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, and pace, and that his failure to do so "is in contrast to his previous finding that Plaintiff has moderate difficulties in concentration, persistence and pace." (Dkt. 12-1 at 24). Plaintiff points specifically to the ALJ's step three finding that, with regard to the "paragraph B" criteria used to assess mental impairments, Plaintiff has "moderate difficulties" for concentration, persistence, and or pace. (See Dkt. 7 at 72). Plaintiff's argument misses the mark. As noted above, the ALJ limited Plaintiff to performing only "work that requires sufficient attention and concentration to understand, remember and follow simple instructions[.]" (Id. ). This finding is fully consistent with the observation that Plaintiff has moderate limitations in concentration, persistence, and pace. See Rivas v. Berryhill , No. 1:17-CV-05143 (ALC), 2018 WL 4666076, at *15, 2018 U.S. Dist. LEXIS 168012, at *43 (S.D.N.Y. Sept. 27, 2018) ("The Second Circuit has repeatedly held that 'moderate' limitations [in concentration, persistence, and pace] do not preclude an individual's ability to perform unskilled work.") (collecting cases); Tatelman v. Colvin , 296 F.Supp.3d 608, 613 (W.D.N. Y. 2017) ("it is well-settled that a limitation to unskilled work ... sufficiently accounts for limitations relating to stress and production pace").
Moreover, in making the "paragraph B" determination, the ALJ's decision is very clear:
The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential *402 evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment....
(Id. ); see also SSR No. 96-8p, 1996 SSR LEXIS 5, at *13 (1996) (under "psychiatric review technique," noting that "the adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment (s) at steps 2 and 3 of the sequential evaluation process"). Accordingly, "to the extent Plaintiff contends that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination." Pidgeon v. Comm'r of Soc. Sec. , No 15-CV-6578 CJS, 2017 WL 4680412, at *7, 2017 U.S. Dist. LEXIS 172565, at *22 (W.D.N.Y. Oct. 18, 2017). "Nor is it necessarily error for an ALJ not to include findings made at Step 3 in the RFC.... Rather, Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." Id. at *7, 2017 U.S. Dist. LEXIS 172565, at *22-23 (internal quotations and citations omitted); see also McIntyre v. Colvin , 758 F.3d 146, 151 (2d Cir. 2014) ("an ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases"). Accordingly, remand on this basis is not warranted.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Although the RFC also addresses Plaintiffs physical limitations, Plaintiff challenges only those portions of his RFC relating to his mental limitations. (See Dkt. 12-1). Accordingly, this Decision and Order addresses the RFC only as it pertains to Plaintiff's mental limitations.